## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **ALBROSCO LIMITED,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 20-cv-3221** |
| | ) | |
| **PRINCE AGRI PRODUCTS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss (d/e 8) filed by Defendant Prince Agri Products, Inc. Defendant requests oral argument on the motion. The Court finds oral argument is unnecessary and denies the request. For the reasons stated below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff Albrosco Limited states a claim in Counts I, III, and IV. Count II is dismissed without prejudice and with leave to replead.

# I.  JURISDICTION

The Court requested further briefing on jurisdiction.  Having received that briefing (Pl. Brief, d/e 13), the Court concludes there is subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

The amount in controversy exceeds $75,000 exclusive of interest and costs. Compl. ¶ 5. The parties are also completely diverse.

Defendant is a Delaware corporation with its principal place of business in Quincy, Illinois. Compl. ¶ 3.  Plaintiff has presented evidence that it is a foreign entity equivalent to a corporation under state law. See Pl. Brief (d/e 13), Aff. of Cherisse Huggins (Ex. 1); Aff. of Magnus Wilson (Ex. 2).  Specifically, Plaintiff is an entity with perpetual existence, governed by a board of directors, with shares that are transferrable, and is treated as independent of its equity investors, who are neither taxable on its profits nor liable for its debts. See Ex. 2, ¶ 6; Lear Corp. v. Johnson Elec. Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003) (finding a Bermuda entity equivalent to a corporation under state law under similar circumstances).

A corporation is a citizen of each state or foreign country in which it is incorporated and the state or foreign country in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Plaintiff is a Trinidad and Tobago corporation with its principal place of business in Port-of-Spain, Trinidad and Tobago. Compl. ¶ 1. As such, complete diversity exists.

Even if Plaintiff were not a corporation but would be more properly characterized as an unincorporated entity, diversity still exists. Collective entities other than corporations have the citizenship of each member or equity investor. Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co. Ltd., 759 F.3d 787, 788 (7th Cir. 2014). Plaintiff is a wholly owned subsidiary of Albrosco Holdings Limited. Pl. Brief (d/e 13), Ex. 2, ¶ 3. Albrosco Holdings Limited holds the same business entity form as Plaintiff. Pl. Brief, Ex. 2, ¶¶ 4-6 (also asserting Albrosco Holdings Limited is incorporated in Trinidad and Tobago with its principal place of business in Port-of-Spain, Trinidad and Tobago). Albrosco Holdings Limited is owned by two equity investors/shareholders, Christopher Louis Aleong and Andrew Aleong, who are citizens of Trinidad and Tobago. Pl. Brief, Ex. 2, ¶¶ 7-9 (also noting neither Christopher nor

Andrew are lawfully admitted for permanent residence in the United States). As such, complete diversity exists even if Plaintiff is not a corporation.

## II. BACKGROUND

The following facts come from Plaintiff's Complaint.  The Court accepts them as true in ruling on Defendant's motion to dismiss. See Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

Defendant "manufactures and sells trace minerals and nutritional specialty products that support nutrition for dairy and beef cattle, swine, poultry[,] and companion animals." Compl. ¶ 4 (alleged on information and belief). For many years, Plaintiff purchased swine nutrition products (premix products) manufactured and sold by Defendant for use in Plaintiff's swine feed rations. Compl. ¶ 4.

On or about August 1, 2017, Plaintiff took delivery of a shipment of premix products manufactured and sold by Defendant. The Certificate of Analysis provided by Defendant to Plaintiff listed the vitamin content under the heading: "We guarantee our products will meet or exceed the following specifications." Compl. Ex. A at 5

(d/e 1-1) (listing, among other things, the levels of Vitamins A and E in the premix products).

Defendant's premix products were the sole source of Vitamins A and E for Plaintiff's swine herd over the relevant time period. Plaintiff alleges, on information and belief, there was a known shortage of Vitamins A and E globally during this time and there were documented cases where Vitamin A and E manufactured and sold commercially had compromised integrity.

In April 2018, Plaintiff began experiencing production challenges caused by declining swine herd health, which persisted into the first two quarters of 2019. The number of pigs born dead or stillborn tripled and deformities and genetic abnormalities steadily increased. The health issues included: "born dead/stillborn pigs; reduced litter size; lactation failure; extended farrowing time; weak pigs at birth; arthrogryposis, incoordination[,] and paralysis of rear limbs; micro-ophthalmia/anophthalmia (incomplete or abnormal eye development); vestigial development of lungs, cleft palate, (development anomalies); liver necrosis; ascites; skeletal muscle hemorrhage and degeneration; and reduction in time to market." Compl. ¶ 17. Plaintiff alleges the health issues presented by its

swine herd "are classically related to Vitamin A and Vitamin E deficiencies." Compl. ¶ 18.

On October 15, 2018, Plaintiff took delivery of a subsequent shipment of premix products manufactured and sold by Defendant. Compl. ¶ 19; Ex. B at 5 (d/e 1-2) (stating, "We guarantee our products will meet or exceed the following specifications" and listing, among other things, the levels of Vitamins A and E in the premix). This shipment was again not consistent with Defendant's product specifications, including being deficient in Vitamin A, Vitamin E, and/or Selenium. In May 2019, Plaintiff discovered that the health issues presenting and increasing in its swine herd were caused by vitamin deficiencies attributable to defects in Defendant's products.

In August 2020, Plaintiff filed a Complaint (d/e 1) against Defendant alleging (1) breach of express warranty; (2) breach of implied warranty of fitness for a particular purpose; (3) breach of implied warranty of merchantability; and (4) negligence. Plaintiff seeks damages, including incidental and consequential damages on the warranty claims and property damage to its swine herd on the negligence claim.

## III. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. <u>Christensen v. Cty. of Boone, Ill.</u>, 483 F.3d 454, 458 (7th Cir. 2007). To survive dismissal, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); <u>Tamayo</u>, 526 F.3d at 1081 ("A plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis.")(quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." <u>Adams v. City of Indianapolis</u>, 742 F.3d 720, 728 (7th Cir. 2014) (internal quotation omitted). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. <u>Id.</u> The court must draw all

inferences in favor of the non-moving party. <u>In re marchFIRST Inc.</u>, 589 F.3d 901, 904 (7th Cir. 2009).

## IV. ANALYSIS

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing the Complaint fails to state a claim.

### A. Plaintiff States a Claim for Breach of Express Warranty in Count I

To state a claim of breach of express warranty under Illinois law, a plaintiff must allege: "(1) the seller made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) the seller guaranteed that the goods would conform to the affirmation or promise." <u>Indus. Hard Chrome, Ltd. v. Hetran, Inc.</u>, 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999).

Defendant argues Plaintiff has failed to state a claim because, other than stating that the products were deficient, Plaintiff has not alleged that the premix products did not contain the Vitamin A and Vitamin E concentrations that Defendant allegedly warranted. Defendant asserts the pleading suggests the premix products were deficient in some way other than the levels stated. Defendant also

argues Plaintiff has not alleged that it tested the Vitamin A and Vitamin E levels in the premix products or has any knowledge that the levels were not as warranted. According to Defendant, Plaintiff relies on speculation that, because there was a known shortage of Vitamin A and Vitamin E, and because its swine herd allegedly encountered health issues, the products must have failed to comply with the allegedly warranted Vitamin A and Vitamin E levels. Defendant asserts this is insufficient to state a claim for breach of warranty.

The Court disagrees. Plaintiff has plausibly alleged that Defendant's products did not contain the Vitamin A and Vitamin E concentrations that Defendant allegedly warranted. Plaintiff alleges that it purchased Defendant's premix products for years and the products were the sole source of Vitamins A and E for Plaintiff's swine herd. Compl. ¶¶ 8, 10. Beginning in April 2018, Plaintiff began experiencing production challenges caused by declining swine herd health, issues "classically related to Vitamin A and Vitamin E deficiencies." Compl. ¶ 12-18. Plaintiff also alleges, on information and belief, that there was around this time known shortages of Vitamins A and E globally and documented cases

where Vitamin A and Vitamin E manufactured and sold commercially had compromised integrity. See <u>Simonian v. Blistex, Inc.</u>, No. 10 CV 01291, 2010 WL 4539450, *3 (N.D. Ill. Nov. 3, 2010) ("nothing in either <u>Twombly</u> or <u>Iqbal</u> suggests that pleading based upon 'information and belief' is necessarily deficient"). Finally, Plaintiff alleges it discovered in May 2019 that the health issues presenting in its swine herd were caused by vitamin deficiencies attributable to defects in Defendant's products. Compl. ¶ 22. Plaintiff is not required to include evidence in the complaint. <u>Tamayo</u>, 526 F.3d at 1081. Plaintiff has alleged a plausible claim.

### B. Plaintiff Fails to State a Claim for Breach of an Implied Warranty of Fitness for a Particular Purpose in Count II

To state a claim for breach of an implied warranty of fitness for a particular purpose under Illinois law, a plaintiff must allege that "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." <u>Indus. Hard Chrome</u>, 64 F. Supp. 2d at 746 (citing 810 ILCS 5/2-315). "A 'particular purpose' differs from the ordinary purpose for which the

goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." 810 ILCS 5/2-315, cmt. 2 (noting, for example, that "shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains").

Defendant argues Plaintiff failed to allege a breach of implied warranty of fitness for a particular purpose because Plaintiff failed to allege a particular purpose and failed to allege Defendant had reason to know the particular purpose.

Plaintiff asserts it has alleged the premix products at issue were intended to serve a particular purpose different from the goods' ordinary purpose—that the premix products were to provide the <u>sole</u> source of essential Vitamins A and E in Plaintiff's swine rations. Plaintiff also contends it alleged Defendant had reason to know of Plaintiff's intended use and was relying on Defendant's skill and judgment in selecting the correct premix products to supply those nutrients.

The Complaint alleges Defendant "sells trace minerals and nutritional specialty products that support nutrition for dairy and beef cattle, swine, poultry and companion animals." Compl. ¶ 4. Plaintiff purchased the products for use in Plaintiff's swine feed rations. Compl. ¶ 8. As alleged, the ordinary purpose of the product is to provide animal feed to cattle, swine, poultry, and companion animals that is nutritionally appropriate. While Plaintiff alleges the products were the sole source of Vitamin A and Vitamin E for its swine herd (Compl. ¶ 10), Plaintiff does not allege any facts supporting the assertion that animal feed that provides the sole source of Vitamins A and E for a swine herd is a "particular purpose" different from the products' ordinary purpose. See, e.g., In re McDonald's French Fries Litig., 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (dismissing breach of implied warranty of fitness for a particular purpose where the plaintiffs alleged the products were promoted and sold "for the use of consumers with dietary issues and sensitivities to such ingredients" and the plaintiff did not identify "what the non-ordinary use of a french fry or hash brown is"); Veath Fish Farm, LLC v. Purina Animal Nutrition, LLC, No. 17-cv-0303, 2017 WL 4472784, *8 (N.D. Ill., Oct. 6, 2017) (allegation

that the plaintiff used the product--fish feed meant for commercial fish stocks--for its commercial largemouth bass did not state a claim for implied warranty of fitness for a particular purpose because the use was not "particular" and the plaintiff did not allege it approached the manufacturer to ensure the product would do something above and beyond its normal advertised function).

Moreover, even if use of the premix products as the sole source of Vitamins A and E for Plaintiff's swine herd were a "particular purpose," Plaintiff does not allege, except in a conclusory fashion, that Defendant knew of this particular purpose. See Compl. ¶ 31 (alleging Defendant "had reason to know of the particular purpose" for which Plaintiff bought the products). "Simply reciting the elements of a cause of action is insufficient to state a claim for relief." Fiqua v. SVOX AG, 754 F.3d 397, 400 (7th Cir. 2014) (citing Iqbal, 556 U.S. at 679). Therefore, Plaintiff has failed to state a claim for breach of an implied warranty of fitness for a particular purpose.

### C. Plaintiff States a Claim for Breach of the Implied Warranty of Merchantability in Count III

To state a claim for breach of an implied warranty of merchantability under Illinois law, a plaintiff must allege "(1) the defendant sold goods that were not merchantable at the time of the sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." Indus. Hard Chrome, 64 F. Supp. 2d at 748 (citing 810 ILCS 5/2-314).

Defendant argues the allegations in support of the claim for breach of the implied warranty of merchantability are vague and conclusory. Defendant also argues Plaintiff failed to allege Defendant did not comply with alleged warranty regarding the Vitamin A and Vitamin E levels in the premix products or otherwise allege how the premix products were not fit for the ordinary purpose for which they are used.

Plaintiff has stated a claim for breach of the implied warranty of merchantability. Plaintiff alleges Defendant sold goods that were not merchantable at the time of sale. "To be merchantable, the goods must be, among other things, fit for the ordinary purpose for

which the goods are used." Indus. Hard Chrome Ltd., 64 F. Supp. 2d at 748 (citing 810 ILCS 5/2-314).

The ordinary purpose of the goods can be inferred from the allegations in the Complaint that Defendant manufactures and sells trace mineral and nutritional specialty products that support nutrition for swine (among other animals). Compl. ¶ 4; ¶ 38 (alleging Defendant is a merchant with respect to swine health and nutrition products); Ex. A at 5; Ex. B at 5. That is, the purpose of the premix products is to provide nutritional support to swine (among other animals), including levels of Vitamins A and E that meet or exceed the levels stated in Defendant's Certificate of Analysis. Compl. Ex. A at 5; Ex. B at 5 (stating "We guarantee our products will meet or exceed the following specification").

Plaintiff alleges the premix products Defendant sold to Plaintiff on August 1, 2017 and October 15, 2018 (Compl. ¶¶ 9, 19) were not fit for the ordinary purpose because the premix products were deficient in Vitamins A and E. Compl. ¶ 41; ¶ 20 ("This 2018 shipment of Defendant's premix was again not consistent with Defendant's product specifications, including without limitation, by being deficient in Vitamin A, Vitamin E, and Selenium").  In support

of the allegations that the premix products were deficient in Vitamins A and E, Plaintiff alleges, on information and belief, the existence of a known global shortage of Vitamin A and Vitamin E during the relevant time and documented cases where Vitamins A and E manufactured and sold commercially had compromised integrity. Compl. ¶ 11. Plaintiff also alleges that (1) its swine herd, which relied solely on Defendant's premix products for Vitamins A and E, began showing health issues related to Vitamin A and Vitamin E deficiencies and (2) Plaintiff discovered in May 2019 that the health issues exhibited by the swine herd were caused by vitamin deficiencies attributable to defects in Defendant's products. Compl. ¶¶ 17-18, 22. These allegations are sufficient to allege that Defendant sold goods that were not merchantable at the time of the sale.

Plaintiff also alleges it suffered damages as a result of the damaged goods. Plaintiff alleges its swine herd began exhibiting health issues consistent with Vitamin A and Vitamin E deficiencies. Compl. ¶¶ 12-18. These health issues included stillborn pigs, reduced litter size, and reduction in time to market. Compl. ¶ 17.

Finally, Plaintiff alleges it gave notice of the breaches to Defendant on May 23, 2019 and June 4, 2020. Compl. ¶ 42.

Because these allegations sufficiently state a claim for breach of the implied warranty of merchantability, the Court will not dismiss Count III.

### D. **Plaintiff Adequately Alleges Causation in the Warranty Claims**

Defendant next argues that, even if Plaintiff sufficiently alleged any breach of express or implied warranty, the Court should dismiss the breach of warranty claims because Plaintiff failed to sufficiently allege causation.

In a proper case, incidental and consequential damages may be recovered for a breach of warranty. 810 ILCS 5/2-714(3). Consequential damages include "injury to person or property proximately resulting from any breach of warranty." 810 ILCS 5/2-715(2)(b). Plaintiff seeks incidental and consequential damages on the breach of warranty claims. Compl. ¶¶ 29, 43.

Plaintiff has sufficiently alleged a direct causal link between Defendant's alleged breach of warranties and Plaintiff's damages. Plaintiff alleges: its swine herd died and suffered health problems

due to Vitamins A and E deficiencies (Compl. ¶¶ 13-18);

Defendant's products were the sole source of Vitamins A and E for

Plaintiff's swine herd during the relevant time period (id. ¶ 10);

Defendant's products were deficient in Vitamins A and E (id. ¶ 20);

and Plaintiff discovered in May 2019 that the health issues in

Plaintiff's swine herd were caused by deficiencies attributable to

defects in Defendant's products (id. ¶ 22, 27, 41). The allegations

and reasonable inferences drawn therefrom are sufficient to allege

causation.

### E. Plaintiff States a Claim for Negligence in Count IV

To state a negligence claim under Illinois law, a plaintiff must

allege (1) the existence of a duty; (2) breach of that duty; and (3) an

injury proximately caused by the breach. Simpkins v. CSX Transp.,

Inc., 2012 IL 110662, ¶ 14 (citing Marshall v. Burger King Corp.,

222 Ill.2d 422, 430 (2006)); see also Sellers v. Boehringer Ingelheim

Pharm., Inc., 881 F. Supp. 2d 992, 1009 (S.D. Ill. 2012) ("In Illinois,

product liability cases asserting negligence fall under the standard

of common law negligence.").

Defendant argues Plaintiff's negligence claim is nothing more

than legal conclusions and conclusory allegations that fail to state a

negligence claim. Defendant asserts Plaintiff has offered no facts to show that Defendant owed a duty to Plaintiff and breached that duty. Defendant also argues Plaintiff failed to allege causation for the same reasons argued with respect to Plaintiff's breach of warranty claims.

Plaintiff adequately alleges the existence of a duty. Plaintiff alleges Defendant manufactures and sells nutritional specialty products (premix products) to support nutrition for swine (among other animals). Compl. ¶ 4. Plaintiff purchased premix products from Defendant (Compl. ¶¶ 8, 9, 19), products Defendant represented met or exceeded the stated specifications for Vitamins A and E concentrations. Compl. Ex. A at 5; Ex. B at 5. Plaintiff alleges that Defendant had a duty to exercise reasonable care in the design, manufacture, testing, packaging, distribution, inspection, and advertising of the premix products at issue. Compl. ¶ 45. This is sufficient to state a duty. See, e.g., Codan Forsikring A/S v. ConGlobal Indus., Inc., 315 F. Supp. 3d 1085, 1095 (N.D. Ill. 2018) (finding the plaintiff alleged a duty of care by alleging the defendant was contractually obligated to provide a refrigerated container set at -18°); Smith v. Boehringer Ingelheim Pharms., Inc., 886 F. Supp. 2d

911, 928 (S.D. Ill. 2012) (finding the plaintiff adequately alleged the existence of a duty by alleging the defendant owed a duty to exercise reasonable care in the design, study, development, manufacture, promotion, sale, labeling, marketing, and distribution of the product); <u>Sellers</u>, 881 F. Supp. 2d at 1009 (plaintiff stated a negligence claim against a drug manufacturer based on a "duty to ... exercise reasonable care in the design, study, development, manufacture, promotion, sale, labeling, marketing[,] and distribution of [drug]").

Plaintiff also adequately alleges that Defendant breached that duty. Plaintiff alleges the premix products were deficient in Vitamins A and E. Compl. ¶¶ 20, 22, 27, 41, 44. Plaintiff alleges Defendant breached its duty to exercise reasonable care in one of many possible ways: by designing, manufacturing, selling, distributing, testing, inspecting, advertising, and/or packaging the premix products in a negligent manner that rendered the premix products defective for their intended use or otherwise failing to exercise due care. Compl. ¶ 46. A reasonable inference can be drawn that Defendant, through its negligence in designing, manufacturing, selling, distributing, testing, inspecting, and/or

packaging its premix products, sold Plaintiff a premix product that did not contain the Vitamins A and E concentrations represented. See, e.g., Codan, 315 F. Supp. 3d at 1095 (finding the plaintiff alleged a duty of care and breach by alleging the defendant was contractually obligated to provide a refrigerated container set at negative 18° and allegedly breached that duty by setting the temperature too high, causing the frozen pork to thaw and spoil).

Plaintiff alleges injury, specifically that it suffered property damage to its swine herd. Compl. ¶ 47. This included stillborn pigs, increased deformities, genetic abnormalities, and liver necrosis, among other things. Compl. ¶¶ 16-17.

Finally, Plaintiff adequately alleges proximate causation. Plaintiff alleges that Defendant's premix products were the sole source of Vitamins A and E for Plaintiff's swine herd. Compl. ¶ 10. Plaintiff further alleges that the swine herd suffered health issues caused by Vitamin A and Vitamin E deficiencies (Compl. ¶¶ 12, 18, 22) and that Plaintiff discovered in May 2019 that the health issues in its swine herd were caused by vitamin deficiencies attributable to defects in Defendant's product. Compl. ¶ 22.  Plaintiff has sufficiently alleged a negligence claim. See, e.g., Roberts v. City of

Chicago, 817 F.3d 561, 564-65 (7th Cir. 2016) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting Iqbal, 556 U.S. at 678).

### V. CONCLUSION

For the reasons stated, the Motion to Dismiss (d/e 8) filed by Defendant is GRANTED IN PART and DENIED IN PART. The motion to dismiss Counts I, III, and IV is DENIED. The motion to dismiss Count II is GRANTED, without prejudice and with leave to replead. Plaintiff may file an amended complaint on or before July 9, 2021. Defendant shall file an answer to the original complaint or an answer or other response to any amended complaint on or before July 23, 2021.

**ENTERED: June 24, 2021**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**